**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**WILLIAM E. SMITH,**                                                                    **PLAINTIFF**
**#651930**

**V.**                                          **CASE NO. 4:20-CV-125-BRW-BD**

**LANCE BONDS,** *et al.*                                                          **DEFENDANTS**

<u>**RECOMMENDED DISPOSITION**</u>

**I.**      <u>**Procedure for Filing Objections**</u>**:**

This Recommendation for the dismissal of Mr. Smith's claims has been sent to

Judge Billy Roy Wilson. The parties may file objections if they disagree with the findings

or conclusions set out in this Recommendation. To be considered, objections must be

filed within 14 days. Objections should be specific and should include the factual or legal

basis for the objection.

If the parties do not file objections, they risk waiving the right to appeal questions

of fact. And, if no objections are filed, Judge Wilson can adopt this Recommendation

without independently reviewing the record.

**II.**      <u>**Background**</u>**:**

William E. Smith filed this civil rights lawsuit without the help of a lawyer under

42 U.S.C. § 1983. (Doc. Nos.1, 2) In his complaint and amended complaint, Mr. Smith

claims that Defendants violated his rights while he was detained at the Stone County

Detention Center (Jail) between September 7 and September 15, 2019. The Court has

dismissed Mr. Smith's access-to-courts claims as well as his claims against the unknown

Stone County District Judge and the Doe Defendant.[1] (Doc. Nos. 12, 31)

The Defendants have now moved for summary judgment on all remaining claims.

(Doc. No. 43) Mr. Smith has responded to the Defendants' motion; and the Defendants

have replied. (Doc. Nos. 51, 56)

## III.   Discussion:

A.  Standard

A party is entitled to summary judgment if—but only if—the evidence shows that

there is no genuine dispute about any fact important to the outcome of the case. See FED.

R. CIV. P. 56 and *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017). Because

Defendants Bonds and Green are the moving parties, the Court will construe any disputed

facts in a light favorable to Mr. Smith.

B.  Deliberate-Indifference Claim

Arkansas State Troopers stopped Mr. Smith on September 7, 2019, and cited him

for driving without a valid license. (Doc. No. 45-2) He was arrested and detained in the

---

[1] Because the Court has dismissed Mr. Smith's access-to-courts claim, the Defendants'
argument regarding that claim need not be discussed in this Recommendation. Also, to
the extent Mr. Smith asserts a due process claim based on his alleged unlawful
extradition, that claim fails. As stated, the Court has already dismissed Mr. Smith's
claims against the Stone County District Judge. In any event, it is undisputed that Mr.
Smith signed a waiver of extradition. (Doc. No. 45-2 at p.12) With the exception of
preparing Mr. Smith for transport, Defendants Bonds and Green were not involved in Mr.
Smith's extradition.

Jail due to an outstanding warrant from the State of Ohio. *Id*. After a brief, eight-day stay at the Jail, officers transported Mr. Smith to Ohio to serve time for a parole violation.

Several months before his September 7 arrest, Mr. Smith had suffered serious injuries in a May fall from a roof and a June 1 assault: broken ribs, severe head trauma, a fractured neck, a collapsed lung, a fractured foot, and a "busted" knee. (Doc. No. 1 at p.4). Mr. Smith spent three days in the intensive care unit of University of Arkansas for Medical Sciences (UAMS) after the assault, but he did not see any specialists between his June 4 release from UAMS and his arrest on September 7. (Doc. No. 56-1, p.9)

In his complaint, Mr. Smith claims that Sheriff Lance Bonds and then-Jail Administrator Kirk Green failed to provide him with adequate medical and mental health treatment during his eight-day stay at the Jail, despite his requests for treatment. (Doc. No. 2 at pp.5-6) Specifically, he complains that Defendants failed to transport him to a follow-up appointment with a neurologist on September 13. Mr. Smith also complains that he "was placed on the concrete floor with no medical assistance" at the Jail. (Doc. No. 1 at p.4)

The deliberate-indifference claim turns on two questions. *Scott v. Benson*, 742 F.3d 335, 339-40 (8th Cir. 2014). First, did Mr. Smith suffer from an objectively serious medical need? And second, did the Defendants actually know of that need but deliberately fail to act? A medical need is considered serious if it has been "diagnosed by a physician as requiring treatment" or is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id*. at 339 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

3

Where a prisoner alleges a delay in medical treatment, "the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment." *Martinson v. Leason*, 22 F. Supp. 3d 952, 964–65 (D. Minn. 2014) (quoting *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir.2005) (citation omitted)). In other words, a delay in treatment must have caused harm before it rises to the level of a constitutional violation. To show harm, "the inmate must place verifying medical evidence in the record to establish the detrimental effect of [the] delay." *Laughlin*, 430 F.3d. at 929.

Deliberate indifference is akin to criminal recklessness. *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citing *Olson v. Bloomberg,* 339 F.3d 730, 736 (8th Cir.2003)). Negligence—even gross negligence—cannot support a claim of deliberate indifference. *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

Here, it is undisputed that Mr. Smith suffered serious injuries as a result of the May fall and the June assault. (Doc. No. 56-1 at pp.7-8) According to his intake papers, however, he did not indicate a need for mental health treatment.[2] (Doc. No. 45-4 at p.1) Although Mr. Smith sustained injuries in the months prior to his arrest, it is not clear that he needed specific treatment for those injuries between September 7 and his scheduled follow-up appointment with a UAMS neurologist on September 13.

---

[2] During his deposition, Mr. Smith testified that he suffers from PTSD as a result of witnessing execution-style murders when he worked at a Florida bar in 1993. (Doc. No. 56-1, p.19) Other than treatment that he received during his various incarcerations, he had not been examined by a physician for his mental health needs within the last five years. (Doc. No. 56-1 at p.23)

During his eight-day stay at the Jail, Mr. Smith submitted three medical request forms. (Doc. No. 45-5 at pp.1-3) According to the Defendants' affidavits, those grievances were given to the nursing staff for review. (Doc. No. 45-1 at p.1; Doc. No. 45-6 at p.1) The Defendants testify that they were not personally aware of Mr. Smith's need for medical treatment during his brief stay at the Jail. (Doc. No. 45-1 at p.1; Doc. No. 45-6 at p.1) They maintain that they first became aware of Mr. Smith's medical condition when they had him evaluated for transport to Ohio. (Doc. No. 45-1 at pp.1-2; Doc. No. 45-6 at p.1)

In his first medical request submitted on September 9, Mr. Smith requested a "medical exam" to assess his "current medical issues . . . 14 broke ribs, fractured neck, also a busted knee." (Doc. No 45-5, p.1) He was treated for these injuries at UAMS in June, and his grievance did not indicate a change in the healing process or any acute needs. (Doc. No. 45-5, p.1) Kate Dennis responded to the request on September 12, informing Mr. Smith that his request for an exam had been "sent to the nurses." *Id.*

Mr. Smith submitted a second medical request form on September 10. In that request, he complained that he had been at the Jail for four days but had not yet seen a nurse. He noted that he was "in recovery" for multiple fractures and head trauma and had a follow-up neurology appointment scheduled for September 13. He asked for a response "ASAP." Ms. Dennis responded to the medical request on September 12: "[T]his has been sent to the nurses." (Doc. No. 45-5, p.2)

On September 13, Mr. Smith wrote a third medical request: "I HAVE NOT YET BEEN AFFORDED A NURSES VISIT. I'M WORRIED ABOUT MY BLOOD

5

PRESURE WHICH WAS AT … 182 OVER 100, "stroke level" RIGHT BEFORE I

CAME IN HERE. . . . THIS IS MY THIRD REQUEST FOR NURSES ASSISTANCE

PLEASE ADVISE."  On September 14, Ms. Dennis responded, "[T]his has been sent to

the nurses." (Doc. No. 45-5, p.3) As noted, Mr. Smith was transported to Ohio the next

day.

The six-day delay between Mr. Smith's September 9 request for a seemingly

routine examination for healing injuries and his September 15 departure from the Jail

hardly constitutes deliberate indifference. There is no evidence in this record of an acute

need for medical treatment for the healing injuries. Even if there had been, there is no

evidence that the delay caused Mr. Smith any harm.

Furthermore, there is no evidence to show that the Defendants knew about Mr.

Smith's need for medical care but deliberately ignored it.[3] In his response to the

Defendants' motion, Mr. Smith states that Defendant Green "had fore knowledge" of his

"medical condition" when he arrived at the Jail; but there is no evidence to support that

statement. (Doc. No. 51 at p.10) Likewise, he states, without supporting evidence, that

Defendant Bonds "knew or should have known the condition Smith was in upon intake."

(Doc. No. 51 at p.8)

Mr. Smith has not come forward with any evidence to indicate that Defendants

interfered with any medical treatment recommended by the medical staff at the Jail.

---

[3] Mr. Smith's "medical authorization for transport" is dated September 15, 2019. (Doc. No. 45-4 at p.4) The form indicates that Mr. Smith did not suffer from any "medical issues."

Without evidence that Defendants knew of Mr. Smith's need for medical treatment or that they interfered or countermanded any recommendation that Mr. Smith receive medical treatment, there is no basis for a finding that these Defendants acted with deliberate indifference.

There is no dispute that Defendants failed to provide transportation for Mr. Smith to keep a September 13 follow-up appointment with a neurologist. In their affidavits, Defendants explain that, due to safety and security risks posed by transporting inmates to outside medical appointments, their practice is to reschedule those appointments. (Doc. No. 45-1 at p.2; Doc. No. 45-6 at p.1) This policy may run afoul of inmates' needs in some cases; but here, there is no evidence that Mr. Smith suffered harm as a result of the cancellation of his neurology follow-up visit.

Two days after the missed neurology appointment, Mr. Smith was transferred to Ohio. Defendants' failure to transport Mr. Smith to a follow-up neurology appointment amounted to a two-delay delay in treatment. Mr. Smith has not come forward with any evidence to show that this two-day delay caused him any harm. Accordingly, Mr. Smith has failed to create any genuine issue of material fact regarding this claim.

C.     Retaliation Claim

In his amended complaint, Mr. Smith alleges that Defendant Green retaliated against him for his use of the grievance procedure. (Doc. No. 2 at p.3) He bases this claim on the fact that Defendant Green forced him to be transported from the courthouse with inmate Hunter, the individual who allegedly assaulted him on June 1.

A prisoner raising a retaliation claim must plead facts showing that he engaged in

constitutionally protected activity; that a defendant took adverse action against him that would chill a person of ordinary firmness from engaging in the protected activity; and that retaliation was an *actual motivating factor* for the adverse action. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). "The lack of a temporal connection between the protected activity and the alleged retaliation dispels any inference of a causal connection." *Lewis*, 486 F.3d at 1029.

The burden of showing that retaliation was a motivating factor for an adverse action is substantial. *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996). Allegations of retaliation must be supported by more than speculation. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996). Here, Mr. Smith's retaliation claims are based entirely on his speculation, suspicion, and supposition.

First, it is not apparent that Defendant Green's decision to transport inmate Hunter and Mr. Smith together in a prisoner van was an "adverse action." Second, even if it was, Mr. Smith has not explained any connection between his filing grievances and the alleged retaliatory conduct. Here, there are no facts to support a retaliation claim against Defendant Green.

D.      Failure to Protect Claim

To the extent that Mr. Smith claims that Defendant Green did not protect him from inmate Hunter, the claim fails. In his deposition, Mr. Smith explains that he had contact with inmate Hunter on three occasions on one day during his incarceration at the Jail. (Doc. No. 56-1 at pp.31, 39) During two of those encounters, both inmates were handcuffed and shackled. (Doc. No. 56-1 at p.31) Mr. Smith also explains that, during the

van ride, inmate Hunter tried to apologize for assaulting him. (Doc. No. 56-1 at p.37)
When they arrived at the Jail, the shackles and handcuffs were removed from both
inmates without any incident.

Prison officials have a duty to protect inmates from violence at the hands of other
prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To prove that Defendant Green
was deliberately indifferent to his safety, Mr. Smith must show that Defendant Green
exposed him to a substantial risk of serious harm and that he actually knew of that risk
yet failed to respond in a reasonable manner. *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th
Cir. 2010).

Here, Defendant Green might have been negligent in transporting Mr. Smith with
inmate Hunter; but Mr. Smith has failed to come forward with any evidence to show that
Defendant Green was aware of Mr. Smith's prior relationship with inmate Hunter. Mr.
Smith concedes that he was "not sure if [Defendant Green was] aware of my condition or
not at that time." (Doc. No. 56-1 at p.35) Furthermore, based on the fact that inmate
Hunter apologized to Mr. Smith during the ride from the courthouse, it is difficult to
conclude that inmate Hunter posed a serious safety risk to Mr. Smith. Accordingly, Mr.
Smith has not created any dispute of material fact regarding any alleged failure-to-protect
claim.

E.    Access to the Inmate Grievance Procedure

To the extent that Mr. Smith alleges that Defendants denied him access to the
inmate grievance procedure, this claim fails. Inmates do not have a constitutional right to
an inmate grievance procedure at all. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir.

2002); and *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Therefore, even if Defendants failed to properly process or respond to Mr. Smith's grievances, that conduct cannot support a constitutional claim for relief.

**IV.**   **Conclusion**:

The Court recommends that the Defendants' motion for summary judgment (Doc. No. 43) be GRANTED.[4] Mr. Smith's claims should be DISMISSED, with prejudice.

DATED this 3rd day of May, 2021.

_____

UNITED STATES MAGISTRATE JUDGE

---

[4] Because Mr. Smith sued the Defendants in their individual capacities only, the Court did not address the Defendants' argument regarding the dismissal of Mr. Smith's official-capacity claims. (Doc. No. 1 at p.4; Doc. No. 2 at p.2) Because Mr. Smith's claims fail as a matter of law, there is no need for further qualified-immunity analysis.